# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | | |
|---|---|---|
| EFRAM BARBER, | * | |
| Petitioner, | * | |
| vs. | * | CASE NO. 7:07-CV-61 CAR<br>28 U.S.C. § 2255<br>CASE NO. 7:02-CR-16 CAR |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

## REPORT AND RECOMMENDATION

Petitioner Barber was indicted in this court along with seven co-defendants on October 31, 2002 (D-12), and charged with Conspiracy To Possess With Intent to Distribute Cocaine in violation of 21 U.S.C. § 846 I/c/w 21 U.S.C. § 841(a)(1) in Count One, and Use of a Firearm During and In Relation To a Drug Trafficking Crime in violation of 21 U.S.C. § 924(c)(1) and 18 U.S.C. § 2 in Count Two. A jury found Petitioner Barber guilty of Count One and not guilty of Count Two on June 26, 2003 (D-142). He was sentenced to a term of imprisonment of 240 months on August 27, 2003 (D-170). The United States Court of Appeals for the Eleventh Circuit affirmed Petitioner's conviction and sentence on September 13, 2005 (D-201). Petitioner's Application for *Writ of Certiorari* was denied on June 5, 2006. Petitioner Barber filed his present Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255 on May 31, 2007. (D-207). In his Motion, Petitioner Barber makes four claims of ineffective assistance of counsel without specificity, referring only to his Memorandum of Law attached thereto. (S-208).

In his Memorandum of Law In Support Of 28 U.S.C. § 2255 Motion To Vacate, Set Aside Or Correct Sentence (D-208), Barber enumerates seven grounds for his motion. His first four grounds claim ineffective assistance of trial counsel, stating as follows:

> I. Trial Counsel Jody D. Peterman, denied Petitioner Efram Barber the Sixth Amendment Constitutional Right to Effective Assistance of Counsel. Counsel's failure to reasonably investigate and correctly advise the petitioner of the possible risks and consequences of standing trial, the improbability of acquittal, and the benefit of entering into his formal plea agreement, caused the petitioner to be substantially prejudiced by going to trial under counsel's misrepresentations.
>
> II. Trial Counsel's failure to interview and call potential defense witness Carlton Marshall to refute the reliability of hearsay testimony offered by detective John Franco, and his failure to make a Rule 801(d)(2)(E) or confrontation objection to such evidence at the conclusion of the trial, was objectively unreasonable and sufficiently prejudicial to the Petitioner's defense case of entrapment.
>
> III. Trial counsel's failure to examine and object to the flawed 404(b) cautionary instruction given to the jury, and his failure to move to strike the alleged 404(b) evidence or move for mistrial, after both the petitioner steadfastly testified that he did not commit said acts and the government failed to satisfy the condition of the offered evidence, was unreasonable on counsel's behalf and prejudicial to the Petitioner's defense case.
>
> IV. Trial Counsel's failure to prepare before trial caused him to mislead the jury and the Petitioner into believing that they would hear essential testimony from the government informant who induced the petitioner. Counsel's conduct also cause the petitioner's constitutional right to due process and his rights to present a complete defense at trial to be violated.

To allow Petitioner Barber to develop his claims and to determine the factual basis for the same, new counsel was appointed and an evidentiary hearing was held on November

28, 2007. (D-214). Petitioner's first four ineffective assistance claim swill be addressed first.

To establish a claim for relief based upon ineffective assistance of counsel, Petitioner must meet the two pronged test of *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1984). Under *Strickland* Petitioner must show: (1) that his counsel's representation was deficient; and (2) that this deficient representation prejudiced Petitioner. *Strickland,* 466 U.S. at 687; see *Baxter v. Thomas,* 45 F. 3d 1501, 1512 (11th Cir. 1995). The Eleventh Circuit Court of Appeals stated in *Rogers v. Zant,* 13 F.3d 384, 386 (1994):

> The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984). To establish prejudice, the Petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694..... When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." *Atkins v. Singletary*, 965 F. 2d 952, 958 (11th Cir. 1992). And, "a court should be highly deferential to those choices ... that are arguably dictated by a reasonable trial strategy." *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioner's to bear, is and is supposed to be a heavy one.

Barber particularized his first claim of ineffective assistance of counsel against Mr.

Peterman, his trial counsel, contending, among other things, in his Claim I, that his attorney failed to advise him of the improbability of acquittal, stating that he would have pled guilty if he had known that he would be exposing himself to a 20 year mandatory minimum sentence by going to trial, and that the first time he learned that he would have to serve a mandatory minimum 20 year sentence based on the conspiracy charge at sentencing, was when the court actually sentenced him to 240 months imprisonment. (D-214 at 91- 92).

Barber's claim that his attorney never told him about the imporbability of acquittal is refuted by his own testimony at the § 2255 hearing. Petitioner Barber testified that:

> I was just telling Mr. Peterman how, you know what I'm saying, the whole thing unfolded and how I ended up getting arrested. . . . He told me it sounds like I had been sat up good and that the only defense that he saw that I had or could have had due to my story was entrapment, but entrapment was a weak defense. . . . He told me that entrapment was – – excuse me, he told me that entrapment was a weak defense, but that was the only defense I had, and I had a right to go to trial or whatever and call the witness and confront him. But at that time he really wanted to talk to the prosecutor about my story and a plea deal.

*Id.* at 12, 13. Petitioner Barber testified that he knew he had been indicted for conspiracy to traffick in cocaine along with seven others, two of which were dismissed, and the rest of which pleaded guilty. He testified that he knew that two of those who had pled guilty would testify against him, and he wanted another, his common law father-in-law testify for him, but his attorney did not think well of the idea. *Id.* at 18, 19, 20, and 205.

Barber maintained that Attorney Peterman *never* told hm that if he went to trial and was convicted he would be facing a minimum of 20 years. (*Id.* at 95). Barber said,

4

however, that Peterman did mention enhancement to him, and he understood that to mean a higher sentence, but Peterman did not ever say how high, although he did say it would be more than 10 years. *Id.* On further cross examination, AUSA Dasher established that Barber did recall his lengthy bond hearing before Judge Hodge, and asked if Barber recalled that he had asked the court not to give Petitioner Barber a bond; and that (reading from the transcript) he had specifically stated:

> Mr. Barber has a prior conviction in 1991. It's referenced on his GCIC as a dangerous drug offense for which he was sentenced to 30 years with seven to be served in prison. Therefore, if the enhancement information is filed with respect to Mr. Barber, and he is convicted, he likewise faces a mandatory minimum 20 years imprisonment.

*Id.* at 97 (Bond Hearing Transcript page 133). Petitioner Barber testified that he did not recall hearing that. *Id.* at 98. AUSA Dasher then established exactly where Petitioner Barber was receiving mail while he was out on bond, and presented Barber with a letter dated March 31st of that year (Government's Exhibit 1), wherein Barber's counsel, Mr. Peterman, advised Barber that he faced a minimum mandatory sentence of 20 years if he went to trial and was convicted. Barber denied ever receiving that letter, although he acknowledged that he had received several other letters from Mr. Peterman at the same address prior to his trial. *Id.* at 101-102.

Attorney Peterman testified at the hearing that, "I had sent him a letter at the end of March indicating that there would be a mandatory minimum 20 year sentence if he was convicted in this case, and that is the letter that you have already shown Mr. Barber." *Id.* at

5

183. Peterman testified:

> Exhibit 1 is the letter that I sent to Mr. Barber where I said, "Please find enclosed the letter from the U.S. Attorney. They're going to file a sentence enhancement where you will receive the 20 year minimum sentence if you are convicted. I know we have talked in detail about this, but I have an ethical duty to forward any information I receive to you."

*Id.* at 186. Attorney Peterman added, summarizing his recollection of the sentencing possibilities, that, "There's not doubt in my mind that I told him that there was the possibility of the mandatory minimum, certainly conveyed in my letter of March 31st." *Id.* at 203.

Petitioner Barber testified at length, remembering in detail the transactions he engaged in, and particularly remembering his efforts to qualify for a U.S.S.G. § 5k.1.1 reduction in sentence for assistance. However, his recall failed him in the details of his notice, verbal and/or written, in regard to a statutory mandatory minimum sentence of 20 years if convicted at trial. His quibbling as to whether the term enhancement had been used instead of an 851 Motion is of no consequence, as the end result would be the same under either. His demeanor, while testifying, did not assure credibility, and his insistence that he was never made aware of the mandatory minimum 20 year sentence upon conviction without a plea agreement, or government reduction motion otherwise, was shown to be disingenuous. His testimony clearly lacked credibility.

As to whose decision it was not to enter into a plea agreement with the Government for an unenhanced sentence, the transcript of the § 2255 hearing reveals that the Government

6

set a date in May, 2003, upon which Petitioner Barber was to enter the Plea Agreement and his guilty plea. (D-214 at 25). Barber related:

> The morning I got to Macon is when Mr. Peterman brought it to my attention that he had just became aware of the fact that I had to plead out – – if I was going to plead out that day, I had to go into custody. Therefore, what he told me about the time that I would have had to do something was – – it was dead. It was something that he had just became aware of. So at that time he told me I could plea and go to jail, or either I could go to trial and depend on entrapment. So I asked him what would my sentence be had I pled out – – if I plea out that day. He told me he couldn't assure me that I would get the 10 years, that he had – – not the 10 years – – the seven years that Mr. Winne had quoted me, but he believed my sentence would be 10 years or less. So I asked him how much time would I get if I went to trial and was found guilty. So he pulled out his guidelines and told me, by looking at the guidelines, he believed I would get 121 months, which was 121 months on the guidelines of 151 months, however, I could have still get that cut back had me and Mr. Chestnut, you know, what I'm saying, made something happen. . . .
> Well, at that time I asked Mr. Peterman to ask Mr. Winne could I plea later because of the fact that he had just told me that I had to go into custody. I hadn't never really made no preparations with my family, and this thing that was going on with Mr. Chestnut. So at that time we exited the courtroom, Mr. Peterman brought these things to Mr. Winne's attention. So Mr. Winne told me really not to worry, and he wanted to go on and get rid of the case, and I could have someone on the outside help me out while I was gone, a third party. . . . And at that time I told them that I could not plea out that day.

*Id.* at 26, 27, 28. Barber related a change of mind about entering a plea, as follows:

> Once Mr. Peterman told me that the man was talking about – – Mr. Winne was talking about enhancement or whatever and I couldn't talk to Chestnut, I had him to talk back to Mr. Winne about letting me plea out. . . . So he recontacted me and told me that Mr. Winne said that if I wanted to plea out, I had to turn

7

> myself in the following day. To my understanding and what I remember, I believe the following day would have been a Saturday, and he wanted me to turn myself into the jail and have a judge down here take my plea that Monday. I can't remember exactly what I told Mr. Peterman about that being inconvenient, but I can remember I believe that Mr. Peterman told me that he had some things to do that Saturday anyway and to be in his office that Monday. . . . That was probably a week or a little after a week after the first change of plea hearing.

*Id.* at 39, 40. Petitioner Barber did not support his first claim of ineffective assistance of counsel against his Attorney. He failed to show that his attorney failed to adequately advise him of the risk of going to trial under his adverse circumstances. The evidence indicates that Attorney Peterman did inform Petitioner Barber of the possibility of the mandatory minimum sentence of 20 years if he was convicted of the charges at trial. Petitioner Barber has not carried his burden of proof to the contrary, and therefore Barber has not shown ineffective assistance of counsel on his first claim.

In his **Claim II,** Barber contends that:

> Trial Counsel's failure to interview and call potential defense witness Carlton Marshall to refute the reliability of hearsay testimony offered by detective John Franco, and his failure to make a Rule 801(d)(2)(E) or confrontation objection to such evidence at the conclusion of the trial, was objectively unreasonable and sufficiently prejudicial to the Petitioner's defense case of entrapment.

It is readily apparent that calling Marshall as a witness for the defense could have easily been a two-edged sword, and may well have harmed Petitioner's chances more than helping them. Marshal had pled guilty to the same charges Petitioner was being tried for and could have proven to be a witness against him on cross-examination. He was a convicted

8

felon whose credibility was statutorily questionable, and he was Barber's common law father-in-law at the time, which would also have made his credibility suspect. Counsel's decision not to call Marshall as a witness was obviously a strategic decision for which counsel should not be second-guessed. (D-214 at 205).

Petitioner's reference to his Attorney's failure to make a Federal Rule of Evidence 801(d)(2)(E) objection seems misdirected. Rule 801(d)(2)(E) provides that:

> A statement is not hearsay if – the statement is offered against a party and is (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

Barber does not make clear in his pleadings (and he did not address this issue at hearing) whether he is making reference to the statements of Detective John Franco, who was not a co-conspirator in the case, or to the confidential informant who was called to testify by Barber's counsel over the Government's objection. If the latter, Petitioner Attorney cannot be found ineffective, because the court granted the Government's objections and disallowed that witness's testimony. Petitioner Barber only speculates that he suffered any prejudice for the absence of the witness which the court, not his counsel, disallowed. Moreover, the United States Court of Appeals for the Eleventh Circuit found the evidence against Barber "overwhelming." (D- 201 at 5). Barber fails to carry his burden of proof as to his Claim II.

In his **Claim III**, Petitioner Barber contended that his Attorney, Mr. Peterman, was ineffective for failing to examine and object to the 404(b) cautionary instruction given to the jury. First, when the Government filed its Motions to introduce evidence of Barbers prior

9

bad acts (D-122, 124, 130), Attorney Peterman filed Responsive pleadings and objections (D-125, 131). The court held a hearing on the Government's proffered 404(b) evidence and Attorney Peterman's objections relating to Barber's prior criminal conduct or bad acts on June 20, 2003. (D-132). The court ruled at the hearing that Barbers August 1991 conviction would not be admitted into evidence, nor would the Government's July 1996 search and seizure warrant and information be admitted. However, over Attorney Peterman's objections, the court ruled to admit into the trial evidence the testimony of five witnesses (two of which were co-conspirators who had already pled guilty in the case) proposed by the Government to testify as to Barbers criminal conduct to show Barber's motive and intent as permitted under Rule 404(b), Federal .Rules of Evidence. Barber has shown nothing to indicate that his counsel was ineffective in regard to the admission of the Rule 404(b) evidence or the court's cautionary charge to the jury regarding the purpose of the admission of that evidence, and the record shows that Attorney Peterman's' efforts on Barber's behalf were well within the range of reasonable representation by counsel. Barber's Claim III is conclusory and unsupported.[1]

In his **Claim IV,** Barber asserted:

> Trial Counsel's failure to prepare before trial caused him to mislead the jury and the Petitioner into believing that they would hear essential testimony from the government informant who induced the petitioner. Counsel's conduct also cause the petitioner's constitutional right to due process and his rights to

---

[1] "Conclusory allegations of ineffective assistance are insufficient. *United States v. Lawson,* 947 F.2d 849, 853 (7th Cir. 1991)." *Wilson v. United States,* 962 F.2d 996 (11th Cir. 1992).

present a complete defense at trial to be violated.**

Barber's complaint here is that counsel advised that if Barber chose to present an entrapment defense, his best chance was to get the person whom he claimed had entrapped him to testify that he had in fact done so. Barber's testimony at hearing does not add credence to this complaint. He stated on direct examination:

> [When I first talked to Mr. Peterman about my story. He told me the only way that he saw that I could prove entrapment, the only way the he felt that I could prove it – – prevail with it was if the informant would get up there and admit to some of the things that I said he did to get me to involve myself in this case, which Mr. Peterman at that time felt was less likely to happen.

(D-214 at 42). Mr. Peterman testified on the subject as follows:

> [W]e talked about the possibility of, you know, with an entrapment defense, you have to show that you're not — predisposed. . . . Well, my determination is that I felt like he (the confidential informant/entrapper) was relevant. He's the one that started this. I think the jury needed to hear from him, and that he was . . . the kind of guy where you could meet him and within two minutes know that he was a liar. . . . I felt like if the jury heard his testimony that they would certainly believe – – even if he contradicted Efram, that they would believe what Efram was saying. Because to this day, I believe Efram and not Louie. I meant, as far as what went down between him and Louie. . . .
>
> Q. And there was an in-camera hearing with Judge Royal during which you attempted to persuade Judge Royal that this person should testify
>
> A. Right.
>
> Q. And your attempt was obviously unsuccessful; is that right?
>
> A. That's right.

> Q. Now hearing Mr. Barber testifying, do you agree that there was something else you could have done or should have done to try to persuade Judge Royal to allow this person to testify
>
> A. I think – I can always give a better argument than what I gave on the record, but I think I made my point, and I think Judge Royal's mind, unfortunately, was made up. I don't think we ever had a shot of getting that in. I didn't believe that coming into trial, but after he started – – we started discussing it before we called him, I just believed he had made up his mind on that issue.

*Id.* at 207, 208, 209. Mr. Barber's Claim IV is conclusory and speculative as to what might have happened, not what would have happened. The United States Court of Appeals for the Eleventh Circuit reviewed Barber's conviction and sentence and found no error in precluding the testimony of the confidential informant under Rule 404(b). "[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *United States v Natelli,* 553 F.2d 5, 7 (2nd Cir. 1997). Petitioner's Claim IV is without merit.

Petitioner's **Claim V** asserts:

> The Sentencing Court Lacked Jurisdiction to impose the enhanced sentence under § 851 in Petitioner's criminal case; trial counsel's failure to inform and defend the petitioner against the enhancement was unreasonable and prejudicial to the petitioner.

This claim presents a question of law only. Since Title 18, United States Code, Section 851 provides that the court has jurisdiction to enhance a criminal sentence thereunder, then Petitioner's claims of ineffective assistance of counsel in regard to his counsel not arguing incorrectly against such action cannot stand.

By enactment of Title 21, United States Code, Section 851, proceedings to establish prior criminal conduct, Congress authorized the district courts to consider information of prior bad acts filed by the Government in criminal prosecutions for sentencing considerations. The court's jurisdiction is clearly derived from the statute. Petitioner's claim that the District Court had no jurisdiction to impose the enhanced sentence under 28 U.S.C. § 851 in Petitioner's criminal case is frivolous.

Petitioner Barber's complaint, that his attorney did not defend and protect him from the enhancement, is likewise without merit. Petitioner Barber has not shown what counsel might have done about the evidence of his prior conduct which the court admitted at trial, in the absence of a Plea Agreement with the Government. Petitioner Barber, himself, rejected a Plea Agreement with the Government, which resulted in his being served with notice that the Government would plead his prior uncharged offenses in a § 851 Motion. All of Petitioner's Claim V is without merit.

Petitioner's **Claim VI** states:

> The Petitioner was constructively denied his Sixth Amendment right to the assistance of counsel during the Motion for New Trial/First Appeal Phase in his criminal proceedings where Appellant post-trial counsel Gerald B. Williams was totally absent in assisting the petitioner.

The record reflects that before sentencing Petitioner Barber filed a Motion for New Trial on July 1, 2003, and at his hearing on August 21, 2003, he requested that his counsel, Mr. Peterman, be removed from the case, so that claims of ineffective assistance of counsel could be raised on appeal by new counsel. (D-164). Petitioner's counsel also filed a Motion

13

to that effect on August 25, 2003. (D-169). The court ordered that the Motion To Withdraw as to Attorney Peterman to be granted on August 28, 2003. (D-174). Petitioner Barber filed a pro se Notice of Appeal on September 9, 2003, preserving his appellate rights. (D-179). On the same date, the court appointed new counsel to represent petitioner on appeal, and Attorney Gerald B. Williams filed his official Notice of Attorney Appearance in the case on September 30, 2003. (D-183). At the evidentiary hearing on his § 2255 Motion, Petitioner entered into evidence five letters received from Attorney Williams between December 15, 2003 and January 13, 2004, imploring Petitioner to tell him what errors he consider to have been committed in his trial and advising him that he had obtained and was researching all of the transcripts of the case, but was finding little to cite as error. *See* Exhibits to Hearing.

Petitioner Barber with his new Counsel Williams moved the United States Court of Appeals for the Eleventh Circuit to withdraw his Notice of Appeal, choosing to pursue his Motion for New Trial. His appeal was thus dismissed without prejudice on October 24, 2003. (D-189). The District Court denied Petitioner's Motion For New Trial on May 6, 2004 (D-197), and on May 20, 2004, Petitioner Barber moved the court to dismiss his second counsel, appoint new counsel, or permit him to proceed pro se. (D-198). Petitioner was allowed to proceed pro se, and he filed a Notice of Interlocutory Appeal on the same date. (D-199).

The United States Court of Appeals for the Eleventh Circuit permitted Petitioner Barber's newly employed counsel, Cedric L. Muhammad, to represent Petitioner in his appellate efforts from August 25, 2004. (D-200). Petitioner was not without the assistance of counsel in his appellate efforts, whether or not Attorney Williams was ineffective during

14

his short involvement in Petitioner's case. Petitioner has not shown that Attorney Williams changed Barber's position in any way. Petitioner did not loose his right to appeal with the assistance of counsel. Nor did he raise on appeal any complaint about the court's denial of his Motion For New Trial. As such, that complaint is defaulted.[2]

Petitioner's Appeal of his conviction and sentence, with new counsel, Muhammad, ultimately concluded in the affirmation of his conviction and sentence by the United States Court of Appeals for the Eleventh Circuit on October 12, 2005. (D-201). Petitioner made application for *Writ of Certiorari,* which was denied by the United States Supreme Court on June 14, 2006. (D-206). Petitioner's Claim VI is without merit.

Petitioner Barber's **Claim VII** asserts a claim of ineffective assistance of counsel against Attorney Muhammad, as follows:

> Appellate Counsel Cedric L. Muhammad's failure to independently investigate, perfect and raise the obvious issues that the petitioner had requested him to do, amounted to petitioner having no counsel at all on direct appeal.

Petitioner Barber testified that Attorney Muhammad did not really do anything for him, that he just took Attorney Williams Anders brief and filed his brief again with the Eleventh Circuit Court of Appeals. (D-214 at 85-88). This claim is unsupported and conclusory and will not suffice as a ground for relief under § 2255. "Conclusory allegations

---

[2]In *Mills v. United States,* 36 F.3d 1052, 1055 (11th Cir. 1999), the Court held, "Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding. See *Greene v. United States,* 880 F.2d 1299, 1305 (11th Cir. 1989), cert. denied, 494 U.S. 1018, 110 S.Ct. 1322 (1990).

of ineffective assistance are insufficient. *United States v. Lawson,* 947 F.2d 849, 853 (7th Cir. 1991)." *Wilson v. United States,* 962 F.2d 996 (11th Cir. 1992). Moreover, contrary to Petitioner's contentions as to things Attorney Muhammad should have done on appeal, the United States Court of Appeals for the Eleventh Circuit found that, "The evidence was overwhelming, especially given the testimony of the co-conspirators." (D-201 at 4). Petitioner has not shown that Attorney Muhammad's performance changed the out come of Petitioner's appeal. Petitioner's Claim VII is without merit.

Petitioner Barber has failed to carry his *Strickland* burden of showing how any deficiency on the part of any of his attorneys could have altered the result of his case.

**WHEREFORE, IT IS RECOMMENDED** that Petitioner Barber's Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255 be DENIED. Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN TEN (10) DAYS after being served with a copy hereof.

SO RECOMMENDED this 29th day of April 2008.

                                                           S/ G. MALLON FAIRCLOTH
                                                           UNITED STATES MAGISTRATE JUDGE